**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY PHILLIPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 09 C 4668** |
| **v.** | ) | |
| | ) | |
| **CITY OF CHICAGO, CITY OF CHICAGO** | ) | **JUDGE DAVID H. COAR** |
| **POLICE DEPT., OFFICER SALVADOR** | | |
| **ENRIQUEZ, OFFICER ARTURO** | | |
| **BRACHO, and OTHER UNNAMED** | | |
| **POLICE OFFICERS,** | | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Phillips brings this action against Defendants the City of Chicago, City of Chicago Police Department, Officers Salvador Enriquez and Arturo Bracho, and other unnamed police officers (collectively "Defendants") under 42 U.S.C. § 1983, alleging unreasonable seizure and false arrest in violation of his rights under the Fourth Amendment and malicious prosecution in violation of Illinois state law. Defendants move for summary judgment on all claims. For the reasons stated below, Defendants' motion for summary judgment in GRANTED.

### FACTUAL BACKGROUND

Plaintiff Anthony Phillips was the owner of a mixed-breed, part German shepherd dog named Spike. (Defendants' Rule 56.1 Statement of Facts ("DSOF") ¶ 12.) As of August 1, 2008, Spike was approximately 15 years old. (*Id.* at ¶ 13.) Spike was unable to walk, suffered from hip dysplasia, and had a mucus-like film around his eyes. As a result of Spike's condition, several complaints were lodged with the Anti-Cruelty Society during the summer of 2008. (*Id.*

at ¶ 22.)  At that time, both Phillips and Spike were living with Phillips's elderly mother, Lorraine Phillips, at 6128 N. Monticello Avenue.  (*Id.* at ¶ 11.)  On June 2, 2008, the Anti-Cruelty Society received a complaint that an older dog at 6128 N. Monticello could not walk, was outside 24 hours a day, and would scream in pain.  (*Id.* at ¶ 23.)  The next day, the Anti-Cruelty Society dispatched an investigator who found no one home at 6128 N. Monticello and no dog in the yard.  The investigator left a legal notice indicating that there had been a complaint of inhumane treatment and requesting that Phillips call the Anti-Cruelty Society.  When the investigator returned a week later on June 10, 2008, he observed an older, mixed-breed German shepherd in the yard.  (*Id.* at ¶ 24.)  He noted that the dog was "in poorer condition."  (*Id.*)  Unable to contact Phillips, the investigator left another notice under the door.  (*Id.*)  The investigator returned on June 19, 2008 and recorded that he observed the same situation as on his previous visit, he was unable to contact the dog's owner or neighbors, and he left another legal notice in the mailbox.  (DSOF- Ex. 8 at D00056.)  On June 26, 2008, the investigator noted no change from previous visits and observed that the dog had food and water out in the driveway.  (*Id.*)  Again, the investigator was unable to contact anyone at the house.  (*Id.*)

On July 9, 2008, the Chicago Commission on Animal Care and Control ("ACC") received a call from a concerned citizen who reported that a dog at 6128 N. Monticello Avenue was living outside for long periods of time, and it appeared that the dog could not walk.  (DSOF ¶ 27.)  Meanwhile, on July 15, 2008, the Anti-Cruelty Society investigator returned to 6128 N. Monticello and finally connected with Phillips.  (*Id.* at ¶ 28.)  When questioned about his dog's condition, Phillips related that the dog was 15 years old and "probably not in the greatest shape" and that he feeds the dog, has cream for the dog's ears, and "just cannot [put the] dog down."

(DSOF- Ex. 8 at D00055.)  The investigator recorded his opinion that the case should be closed. (*Id.*)

Back at the ACC, another complaint of abuse was recorded on July 29, 2008.  Animal Control officer Daniel Nutley was sent to 6128 N. Monticello, where he observed a dog in the front yard by the driveway who could not open his eyes and "ha[d] to drag both of its back legs in pain."  (*Id.* at D00061.)  A citation was issued, and the status of the ACC service request was elevated from "urgent" to "emergency."  (*Id.*)  Based on Nutley's report, ACC supervisor Bradley Block reported abuse allegations to Sergeant Eldon Urbikas of the City of Chicago Police Department Animal Crime Unit on August 1, 2008.  (DSOF- Ex. 14, John Paul Norton Aff. ¶ 7, Aug. 16, 2010.)  Sergeant Urbikas informed Defendant Officers Bracho and Enriquez of Block's complaint of alleged animal abuse and dispatched them to 6128 N. Monticello Ave. (DSOF ¶ 31.)

When they arrived at 6128 N. Monticello Ave., Officers Enriquez and Bracho found a mixed-breed German shepherd lying on the ground.  (*Id.* at ¶ 32.)  The officers observed that the dog was unable to see or use its rear legs, he had a buildup of mucus around both eyes, he was mangy, and he appeared as though he had not been cared for in months.  (*Id.*)  They also noted that there was no wholesome food or water readily available to the dog.  (*Id.*)  The officers claim that they interviewed Phillips's mother, who stated that she was the owner of the dog and that the dog was fine.  (DSOF- Ex. 12, Salvador Enriquez Aff. ¶ 6, Aug. 12, 2010; DSOF- Ex. 13, Arturo Bracho Aff. ¶ 7, Aug. 12, 2010.)  According to Officer Enriquez, while he and his partner interviewed Phillips's mother, he saw Phillips "drag the dog through the side door and throw it in the hallway of his house."  (Enriquez Aff. ¶ 7.)  Phillips denies this and posits that if he had behaved as Officer Enriquez alleges, he would have injured his frail dog.  (Pl.'s Resp. to DSOF ¶

34.)  In their arrest report, the officers noted that when they questioned Phillips, he stated that he could not provide veterinary records and that his dog had not received medical attention. (DSOF- Ex. 5 at D00028.)  Phillips concedes that he had never taken Spike to a veterinarian before his arrest but claims that he provided for the dog's medical needs by purchasing supplies such as fly ointment and cream for his ears.  Phillips claims that, during his exchange with the officers, they stood at the side door of his mother's house, peered inside to see Phillips's dog, and said they wanted to take him.  (Pl.'s Resp. to Summ. J. at 3.)  Phillips refused to allow the officers to enter the house or take the dog.  (*Id.*)  He claims that, over his objection, the arresting officer placed his foot in the doorway so that Phillips could not close the door and proceeded to follow him up the stairs before garnishing handcuffs and arresting him.  (*Id.*)  Phillips then called his lawyer, and his mother called the police station to report to a supervisor that the cops were making a mistake.  (*Id.*)  Nevertheless, Officers Enriquez and Bracho placed Phillips into custody and charged him with animal cruelty under 510 ILCS 70/3.01.  (DSOF ¶ 35.)  Phillips was then transferred to the 17th Police District for processing.  (*Id.* at ¶ 36.)  Phillips complains that, rather than transporting him directly to the police station, the driver of the police wagon drove down side streets, barreling into turns to give him an "amusement park thrill ride effect." (Pl.'s Resp. to DSOF ¶ 36.)

Meanwhile, after Phillips's arrest, ACC officer Norton arrived at 6128 N. Monticello Avenue to conduct a follow-up investigation.  (DSOF ¶ 38.)  Although Phillips's mother refused to permit Norton to take Spike, Norton was able to observe the dog inside the back area of the house.  (*Id.* at ¶¶ 38, 41.)  According to Norton, the dog appeared dehydrated and extremely underweight, and he could not stand.  (*Id.* at ¶ 41.)  As Norton was leaving, a neighbor informed

him that she was concerned for the dog's health and reported that he had been mistreated and in poor condition for a long time.  (*Id.* at ¶ 42.)

Phillips was released from Cook County jail on August 2, 2008, and the charges against him were eventually dropped.  (*Id.* at ¶¶ 44-45.)  On August 11, 2008, Phillips took Spike to a veterinarian, Dr. Jean Claus, who opined that Spike had not been abused.  (DSOF ¶ 46; Ex. 17, Jean Claus Dep. 16:24-17:4, Jul. 7, 2010.)  In particular, Dr. Claus noted that "the owner had to be doing something right" because Spike had lived longer than the average life expectancy for German shepherds.  (Claus Dep. 16:24-17:11.)  At the time that he offered his opinion, Dr. Claus was not aware of the Anti-Cruelty Society's allegations that Phillips had abused and neglected Spike.  (DSOF ¶ 47 On August 23, 2008, Spike was euthanized.  (DSOF ¶ 46.)

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's

favor.  *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).  At summary

judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility

of witnesses, or to determine the truth of the matter, but instead to determine whether there is a

genuine issue of triable fact."  *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508,

512 (7th Cir. 2008).

## ANALYSIS

Phillips brings the instant action under 42 U.S.C. § 1983, alleging that his Fourth

Amendment rights were violated when Officers Enriquez and Bracho entered his mother's house

and arrested him without a warrant.  Defendants contend that Phillips's § 1983 claims, and his

related state-law claim for malicious prosecution, are defeated by the existence of probable

cause.  The Court agrees.

The Fourth Amendment protects the right of the people "to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend.

IV.  In order to arrest an individual without a warrant, the police must have probable cause to

believe that he has committed a crime.  *U.S. v. Oliva*, 385 F.3d 1111, 1114 (7th Cir. 2004).

Likewise, probable cause is an absolute defense to an individual's claim that he was arrested in

violation of the Fourth Amendment.  *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir.

2009).

A police officer has probable cause to arrest an individual if, at the time of the arrest, the

facts and circumstances known to him "are sufficient to warrant a prudent person, or one of

reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to

commit an offense."  *Gonzalez*, 578 F.3d 526, 537 (7th Cir. 2009) (quoting *Michigan v.

DeFillipo*, 443 U.S. 31, 37 (1979)) (internal quotation marks omitted).  Courts assess probable

cause objectively by looking at "the conclusions that the arresting officer reasonably might have drawn from the information known to him" and by "consider[ing] the facts as they reasonably appeared to the arresting officer, seeing what he saw, hearing what he heard, and so forth." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007). "A police officer may of course exercise common sense and draw upon his training and experience in evaluating the totality of the circumstances confronting him, and a court must likewise make allowance for such judgments in deciding what the arresting officer reasonably might have concluded about the facts." *Id.* Further, probable cause "requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Swearigen-El v. Cook County Sheriff's Dept.* 602 F.3d 852, 863 (7th Cir. 2010) (internal citation and quotation marks omitted).

As Defendants properly argue, Officers Enriquez and Bracho had probable cause to believe that Phillips had abused Spike in violation of the Illinois Humane Care for Animals Act, 510 ILCS 70/3.01. Section 3.01 of the Act provides that "[n]o person or owner may beat, cruelly treat, torment, starve, overwork or otherwise abuse any animal." 510 ILCS 70/3.01. At the time that they arrested Phillips, the officers were aware that the ACC had reported allegations of abuse and neglect to their supervisor in the Chicago Police Department Animal Crime Unit. Under their supervisor's directive, the officers went to Phillips's mother's house, where they observed that Spike was unable to see or use his rear legs, he had a buildup of mucus around both eyes, he was mangy, and no ready access to food or water. Phillips admits that the officers' characterization of Spike's appearance is accurate but explains that Spike's condition resulted from his old age, not abuse. According to Phillips, many old German shepherds like Spike suffer from hip dysplasia, which explained Spike's inability to use his back legs and his thin stature.

Phillips also concedes that he told the officers that Spike had never been to a veterinarian and that he provided for Spike's medical needs on his own. Given the officer's observations of Spike's condition, their awareness of the ACC's abuse-and-neglect complaint, and Phillips's admission that he had never taken Spike to a veterinarian, the officers had probable cause to believe that Spike had been abused. That is not to say that Spike actually had been abused. Indeed, it is quite possible that Spike's deteriorating condition was purely a function of his old age. However, probable cause does not require evidence sufficient to convict Phillips of animal abuse, or even evidence that the officers' beliefs were more likely true than false. *See Swearigen-El*, 602 F.3d at 863. The officers needed only facts sufficient to support a reasonable belief that Spike had been abused. Because the Court concludes that such facts existed, Officers Bracho and Enriquez had probable cause to arrest Phillips. Accordingly, Phillips's claims that his Fourth Amendment rights were violated must fail.[1]

The existence of probable cause defeats Phillips's state-law claim of malicious prosecution as well. To succeed on a claim of malicious prosecution under Illinois law, a plaintiff must show: "(1) the commencement or continuation of an original criminal or civil proceeding by the defendants; (2) termination of the proceeding in his favor; (3) the absence of probable cause; (4) the presence of malice on the defendants' part; and (5) damages." *Swearnigen-El*, 602 F.3d at 863 (citing *Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 319 (Ill. 2009)). As discussed above, Defendants had probable cause to arrest Phillips and charge him with violating Illinois's Humane Care for Animals Act, 510 ILCS 70/3.01. Because Phillips

---

[1] In his complaint, Phillips alleges generally that when the officers entered his mother's house without a warrant, they violated his constitutional right to be free from unlawful search and seizure. The Court notes that "[o]ne exception to the Fourth Amendment's prohibition on warrantless searches of a person's home is a search incident to arrest." *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 627 (7th Cir. 2008). When officers enter a person's home to make an arrest under this exception, they may "conduct a plenary search of the arrestee's person and the area within his immediate control." *Id.* To the extent Phillips claims that the officers unlawfully entered and searched his mother's home, he offers no argument or evidence that they exceeded the permissible scope of a search incident to arrest.

cannot satisfy the third element of a claim for malicious prosecution, the Court grants summary

judgment on this claim as well.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED.


Enter:
/s/ David H. Coar

_____

David H. Coar
United States District Judge


**Dated:** December 2, 2010